**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

---

**ERI BRANDS LLC**, a Florida limited liability company,

    Plaintiff,

v.

**NORTH AMERICAN BANCARD LLC**, a Delaware limited liability company, **SIGNATURE PAYMENTS LLC**, a California limited liability company, and **FRESNO FIRST BANK**, a California banking corporation,

    Defendants.

Case No. 2:23-cv-10400

HON.

---

Scott W. Kraemer (P69822)
KUIPER KRAEMER PC
Attorneys for Plaintiffs
180 Monroe NW, Suite 400
Grand Rapids, MI 49503
(616) 454-3700
kraemer@k2legal.com

---

## PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff ERI Brands LLC, by and through its attorneys, Kuiper Kraemer PC, and for its Complaint against Defendants North American Bancard LLC, Signature Payments LLC, and Fresno First Bank, states as follows:

### THE PARTIES

1. Plaintiff ERI Brands LLC ("ERI") is a Florida limited liability company with its principal place of business in Sandusky, Ohio. ERI is a merchant selling various goods on the internet.

1

2. Defendant North American Bancard LLC ("NAB") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Troy, Michigan.

3. Defendant Signature Payments LLC ("Signature") is a limited liability company organized under the laws of the State of California with its principal place of business in Burbank, California. Signature is a wholly owned subsidiary of NAB.

4. Defendant First Fresno Bank ("Fresno Bank") is a state chartered commercial bank organized under the laws of the State of California with its principal place of business in Fresno, California.

## JURISDICTION AND VENUE

5. This Honorable Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 1367 because at all material times, there is and was diversity of citizenship, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest, cost, and attorneys' fees.

6. Venue for this action is proper in this Honorable Court because the Defendants either reside in, are domiciled in, or conduct business activities within this Honorable Court's jurisdiction.

## FACTUAL ALLEGATIONS

### Overview of the Parties and the Card Brand Rules

7. Plaintiff is, and was at all relevant times, an online marketer of various dietary supplement products. In order to do business and market its respective products to consumers online, Plaintiff requires the ability to accept debit and credit card payments from its respective customers for product purchases made via its website.

8. To accept card payments, a business (commonly referred to as a "merchant" in the payments industry) must first open a "merchant account" for payment processing services by entering a "merchant agreement" with a member bank of Mastercard International Incorporated, Visa Inc., Discover Financial Services, LLC, American Express, and/or other networks (collectively the "Card Brands").

9. Such member banks have direct agreements with the Card Brands that enable them to process payments made by holders of debit and credit cards issued by the Card Brands to purchase goods and services from merchants that contract with such member banks for merchant services. This process is called "acquiring" and the banks are often referred to as "acquirers".

10. Acquirers, in turn, may contract with third party organizations, also known as "Third Party Agents" or "Member Service Providers" (hereinafter "MSPs"), to provide processing related services ("Program Services") to merchants under the acquirer's sponsorship with the Card Brands.

11. An acquirer's membership agreement with the Card Brands requires the acquiring bank to comply, and ensure the compliance of its MSPs, with Card Brand Rules. See *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS Inc.*, 59 S.W.3d 63, 66 (Tenn. 2001) ("Only banks and other similar financial institutions may become members of the Visa and Mastercard associations. These banks enter into membership agreements with Visa and Mastercard; the agreements incorporate the rules and regulations of Visa and Mastercard and allow the member banks to provide credit card processing services.").

12. An MSP is categorized by the Card Brands based on the nature of the Program Services to be performed. For example, as in this case, an acquirer may sponsor an MSP as an Independent Sales Organization ("ISO") to solicit merchants for payment processing services on

3

its behalf, including application processing, customer service and statement preparation not affording access to account data or transaction data.

13. In addition, an acquirer may sponsor a payment processor to effectuate the process by which payments are made with a debit card or credit card, transmitted to the acquirer, and then "settled" to the merchant's account.

14. Before an entity commences to perform a Program Service that supports or benefits a member bank's acquiring program, the acquirer must generally: 1) verify that the entity is operating a bona fide business, 2) has sufficient safeguards in place to protect account and transaction data from unauthorized disclosure or use, 3) complies with applicable laws; and cause the entity to be registered by the Card Brands as an MSP, and 4) investigate compliance concerns including KYC/BSA/AML. An MSP may perform only the type of Program Service that it is registered to perform. See, e.g., Mastercard Rule 7.2 (The Program Service and Performance of Program Service). Thus, for example, in order to perform ISO services on behalf of an acquirer, an MSP must first be registered as an ISO and the ISO must contractually agree to comply with the Card Brand Rules as a condition to its sponsorship by the member bank for registration with the Card Brands.

15. Applying these terms here, Fresno Bank is a member bank that offers credit card processing services as an acquirer to merchants (like Plaintiff) enrolled in its Program. Signature, in turn, is registered with the Card Brands as an ISO under the sponsorship of Fresno Bank, which means that Signature provides ISO Program Services as an MSP on behalf of Fresno Bank, soliciting prospective merchants for participation in its Program according to Fresno Bank's prescribed underwriting guidelines and policies, onboarding those merchants as they are approved by Fresno Bank, and providing customer service and ongoing support to those merchants in

connection with the Program, all in return for residual fees flowing from the merchants' processing activity with Fresno Bank.

16. This means that the member bank must at all times be entirely responsible for, and must manage, direct, and control, all aspects of its merchant program and the services performed by its registered third-party agents in support of the program, and establish and enforce all program management and operating policies in accordance with the Visa and Mastercard Rules ("Card Brand Rules"). The member bank must not transfer or assign any part of such responsibilities, or in any way limit its responsibility, with regard to any of its third-party agents. This includes the payment processor and the ISO. An ISO must not have access to any account for funds due to a merchant (e.g., settlement funds) or withheld from a merchant for chargebacks (e.g., reserves).

17. An acquirer must not assign or transfer to an ISO an obligation to pay or reimburse a merchant if the obligation arises from the merchant's processing activity. See, e.g., Mastercard Rule 7.3 (Access to Merchant Account). Discount rates (or similar charges called by other terms) due to an acquirer from a Merchant must be collected directly by the acquirer and not by the ISO. See, e.g., Mastercard Rule 7.6.2 (Collection of Funds from a Merchant).

18. All these responsibilities are clear under the Card Brand Rules. For example, the Visa Global Acquirer Risk Standards, dated October 2018 state in the very first section:

> The obligation to manage and monitor merchant and third party agent (TPA or agent) relationships has been a long-standing Visa client responsibility. The Visa Core Rules and Visa Product and Service Rules (hereafter collectively referred to as the "Visa Rules") place responsibility for merchant and agent oversight and any losses caused by either entity on the acquirer. The Visa Global Acquirer Risk Standards (GARS) were developed to provide acquirers with a set of risk controls to aid in protecting their institutions and the Visa payment system from undue financial harm or reputational damage. The Visa Global Acquirer Risk Standards guide is a 'Visa Supplemental Requirements' document and thus an extension of the Visa Rules.

**The Merchant Application**

19. Fresno Bank offers transaction authorization, processing and network services throughout the United States to businesses accepting credit and debit cards as payment for products and services.

20. Signature promotes Fresno Bank as providing affordable processing packages and unparalleled service and support for all of its merchants, including the latest technology, premium customer service, and cost savings for each business Fresno Bank assists.

21. Signature solicited Plaintiff on behalf of Fresno Bank and promoted all of the aforementioned to Plaintiff.

22. Plaintiff relied on these claims in deciding to do business with Fresno Bank.

23. In order to use Fresno Bank's services, each merchant must execute a Merchant Application.

24. Metadata for the Merchant Application provided by Signature to Plaintiff reflects that on July 19, 2022, Plaintiff truthfully and accurately completed the Merchant Application, which identifies Signature as the ISO. However, the Merchant Application also identifies multiple banks, stating at the top of the Merchant Application, "Signature Payments is a registered ISO of Merrick Bank and a DBA of EPX, a registered ISO of BMO Harris Bank N.A., Chicago, IL, and Fresno First Bank, Fresno, Ca."

25. Notwithstanding the ambiguity of the Merchant Application, it was, and always has been Plaintiff's understanding that it completed a Merchant Application provided by Signature for Fresno Bank.

26. The Merchant Application was the sole document that was provided to Plaintiff that enumerated the terms and conditions of the Agreement between Fresno Bank, Signature and Plaintiff (hereinafter the "Parties"). The Merchant Application clearly states:

> "Merchant acknowledges that you have accessed our Merchant Processing Agreement ("Agreement") at www.merchantinfo/agreement. By signing below, Merchant agrees to all terms and conditions contained therein. From time to time, the Agreement may be updated. When this occurs, Agent (as defined below) will notify Merchant electronically (or by delivery method selected by Merchant at time of disclosure) when such updates have been made. Merchant acknowledges that continued use of Agent Merchant services after update signifies Merchant Acceptance of updated Agreement"

27.  Throughout the term of the Merchant Agreement, no such update was ever communicated to Plaintiff. Further, accessing the website for the terms and conditions as instructed did not provide terms and conditions of the relationship between Plaintiff, Signature and Fresno Bank, but instead described the relationship between Plaintiff, Signature and another bank, identified on the Merchant Application as Merrick Bank. Metadata for the Merchant Agreement obtained by accessing the website on January 31, 2023, reflects that it was created on April 7, 2017 and modified only once, on July 5, 2017.

28.  As such, despite repeated requests to Signature by Plaintiff for the applicable terms and conditions, no such document that described the parameters of the contractual relationship between the parties was ever provided by either Signature or Fresno Bank. All Plaintiff had to rely on during the term of the contractual relationship with Fresno Bank and Signature was the Merchant Application.

29.  Plaintiffs executed the same Merchant Application form. (Merchant Application, **Exhibit A**.)

30.  Signature submitted the completed Merchant Application to Fresno Bank, and Fresno Bank approved the Merchant Application, confirming its approval by opening a merchant account with a unique merchant account identification number (known as a "MID"), for the Plaintiff. Thus, Plaintiffs contracted with Fresno Bank and Signature for payment processing services provided by Fresno Bank.

7

31. Shortly after Fresno Bank approved the Plaintiff's Merchant Application, Plaintiff submitted its own customer sales transactions for product purchases by consumers via the respective URL provided by Fresno Bank for processing through its MID.

32. Under the terms of the Merchant Application, various fees were to be paid to Signature based on the number of customer sales transactions for product purchases by customers for processing in a given month.

33. On information and belief, from review of Merchant Statements received by Plaintiff from Signature, Plaintiff was both charged for fees that were not disclosed in the Merchant Application and in addition charged for existing fees in excess of those that appeared in the Merchant Application. No such notice as to the addition of new fees or the increase of existing fees was ever received by Plaintiff.

34. On October 4, 2022, Fresno Bank received a letter from Visa entitled "Visa Fraud Monitoring Program ("VFMP") – Early Warning Timeline (hereinafter the "Letter".) In that letter it stated that Plaintiff "has been identified in the VFMP Early Warning Report for the month of Oct 2022 by exceeding the VFMP program thresholds based on fraudulent transactions reported by issuers." However, the Letter went on to state, "*Although no current action is required*, it is strongly recommended that your institution investigate the root causes and drivers of the fraud with the merchant and develop a remediation plan to reduce the impact of fraud or take alternate actions as appropriate." (emphasis added).

35. On October 10, 2022, Plaintiff received a notice from Signature, notifying Plaintiff that "effective October 1, 2022; Signature Payments will terminate your merchant account for the following reason(s): excessive chargeback's."

36. A "chargeback" occurs when a customer disputes the charge on its credit or debit card, incurred for the purchase of a good or service that was purchased, arguing that the good or service was never received, does not comport with what was advertised, is defective, or in some cases was not ordered at all. The customer will therefore request that the charge incurred be "charged back" and the funds for the good or service be returned to the customer.

37. Signature was terminating Plaintiff's merchant account for incurring a level of chargebacks as compared to total sales transacted that was deemed excessive.

38. However, in addition to termination of the merchant account, Plaintiff subsequently learned that on October 25, 2022, it was placed on the "Member Alert to Control High-Risk Merchants", or MATCH list, for "excessive fraud." In addition, Plaintiff learned for the first time from Signature that it had not been placed on MATCH by Fresno Bank or Signature, but had in fact been placed by NAB, the owner of Signature.

39. On information and belief, sometime after the completion and approval of the merchant application with Plaintiff, NAB took on the assignment of all rights and obligations to said merchant application, subsuming Signature as a party to said merchant application.

**The Match List**

40. The MATCH List is a comprehensive database created and managed by Mastercard. Visa has its own list, the "Terminated Merchant File" or "TMF". Acquiring banks are required to reference the MATCH List to screen merchant applicants and determine the risk they pose to providing a merchant account.

41. Placement on the MATCH list is a "blacklist", that for all intents and purposes prohibits Acquirers from offering payment processing service to a merchant who appears on that list for a period of five years from placement. For merchants such as Plaintiff who sell their products on-line, it is a death sentence, as it precludes the merchant from accepting credit cards or

debit cards as payment for its goods and services. As such, per the Card Brand Rules, it is not to be utilized arbitrarily or capriciously.

42. Mastercard Rule 11.1 (MATCH Overview) states that the "system is designed to provide acquirers with the opportunity to develop and review enhanced incremental risk information before entering into a Merchant Agreement. MATCH is a mandatory system for Mastercard Acquirers unless excused by Mastercard or prohibited by law."

43. Mastercard Rule 11.2.2 (When to Add a Merchant to MATCH) specifically mandates that "[i]f either the Acquirer or the Merchant acts to terminate the acquiring relationship (such as by giving notice of termination) and, at the time of that act, the Acquirer has reason to believe that a condition described in Table 11.4 exists, then the Acquirer must add the required information to MATCH within five calendar days of the earlier of either:

   a. A decision by the Acquirer to terminate the acquiring relationship, regardless of the effective date of the termination, or

   b. Receipt by the Acquirer of notice by or on behalf of the Merchant of a decision to terminate the acquiring relationship, regardless of the effective date of the termination.

Acquirers must act diligently, reasonably, and in good faith to comply with MATCH system requirements."

44. While Signature had effectuated the termination of the merchant account, it explained to Plaintiff that NAB, which owned Signature, had effectuated the placement on MATCH.

45. Dispute numerous requests for evidence that would substantiate the "excessive fraud" that NAB felt justified placement on the MATCH list, NAB has been unable or unwilling

to provide such documentation. The inability to obtain a payment processor has crippled Plaintiff's ability to sell its products. Given that NAB has been unable to justify its actions, legal action was initiated.

## COUNT I
## BREACH OF CONTRACT
### (Against All Defendants)

46. Plaintiff hereby repeats, re-alleges, and incorporates by reference herein as though set forth in full each and every allegation contained in the paragraphs above.

47. Plaintiff entered into a valid and enforceable contract with Fresno Bank and Signature.

48. On information and belief as assumed as a result of the actions outlined above, NAB took assignment of the contract with Plaintiff, assuming all rights and obligations enumerated therein.

49. Plaintiff fully and faithfully performed all obligations owed to Defendants under the contract, except for such obligations that Plaintiff has been excused or prevented from performing by virtue of Defendants' own conduct.

50. Fresno Bank has materially breached the contract as Fresno Bank must at all times be entirely responsible for, and must manage, direct and control, all aspects of its merchant program and the services performed by its registered third-party agents in support of the program, and establish and enforce all program management and operating policies in accordance with the Card Brand Rules.

51. Further Fresno Bank has materially breached the contract by failing to provide Plaintiff with a copy of the terms and conditions which would establish the parameters of the contractual relationship between the parties.

52. Fresno Bank and Signature have materially breached the contract by charging fees to Plaintiff without notice and which were not disclosed in the Merchant Application and in addition as to existing fees were in excess of those amounts disclosed in the Merchant Application.

53. By virtue of their relationship, NAB and Fresno Bank were at all times entirely responsible for managing, directing, and controlling all aspects of its merchant program and the services performed by its registered third party agents in support of the program in accordance with the Card Brand Rules.

54. Defendants breached the contract with Plaintiff by, *inter alia*, (a) failing to comply with the Card Brand Rules with respect to the action it took against Plaintiff's account and (b) placing Plaintiff on the MATCH list for "excessive fraud" without any evidence in violation of Mastercard Rule 11.2.2, which states "[a]cquirers must act diligently, reasonably, and in good faith to comply with MATCH system requirements."

55. As a direct and proximate result of Defendants' aforementioned breach(es), Plaintiff has suffered damages resulting from lost sales volume, lost revenues, improperly assessed fees, and other economic damages to be determined at trial

### COUNT II
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against All Defendants)**

56. Plaintiff hereby repeats, re-alleges, and incorporates by reference herein as though set forth in full each and every allegation contained in the paragraphs above.

57. The Merchant Application between Plaintiff, Fresno Bank, Signature, and NAB contains an implied covenant of good faith and fair dealing.

58. This implied covenant of good faith and fair dealing required that Fresno Bank, Signature, and NAB act in good faith so as not to defeat the purpose or deprive Plaintiff of the benefits of the Merchant Application.

59. NAB as the assignee of all rights and obligations inherent under the Merchant Application, claims to have the right to place Plaintiff on the MATCH list with no justification whatsoever, in violation of Card Brand Rules, depriving Plaintiff of the benefits inherent in this, or any, Merchant Application. In addition, the Merchant Application does not provide for this.

60. Further, Fresno Bank, must at all times be entirely responsible for, and must manage, direct and control, all aspects of its merchant program and the services performed by its registered third-party agents in support of the program, and establish and enforce all program management and operating policies in accordance with the Card Brand Rules. As such, Fresno Bank bears ultimate responsibility for the actions taken by NAB and Signature.

61. Consequently, Signature has charged fees that do not appear in the Merchant Application, and for those fees that do appear, charging far in excess of those fees that appear in the Merchant Application.

62. Thus, the implied covenant of good faith and fair dealing prohibits NAB, Fresno Bank and Signature from the actions taken that serve as the basis for this Complaint.

63. NAB, Fresno Bank and Signature's conduct runs squarely afoul of the implied covenant of good faith and fair dealing inherent in the Merchant Application between the parties.

64. As a direct and proximate result of NAB, Fresno Bank, and Signature's breaches of the implied covenant of good faith and fair dealing inherent in the Merchant Application with Plaintiff, Plaintiff has suffered direct damages corresponding to lost sales incurred as a direct result of the MATCH placement by NAB, and therefore Fresno Bank, as well as the lost monies incurred as the result of the fees inherent to the Merchant Application, which Signature failed to disclose both in their existence and the amount, in an amount to be determined at trial. Such damages are clearly ascertainable both in nature and in origin.

## COUNT III
## TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY
### (Against NAB and Fresno Bank)

65.     Plaintiff hereby repeats, re-alleges, and incorporates by reference herein as though set forth in full each and every allegation contained in paragraphs 1 through 56 above.

66.     Plaintiff had an ongoing relationship with its customers, which contained a reasonably probable future economic benefit or advantage to Plaintiff.

67.     Defendants knew of the ongoing relationships Plaintiff had with its customers as NAB was a payment processor who regular processed transactions derived from payments for purchases by Plaintiff's customers.

68.     Defendants interfered with Plaintiff's economic relationship with Plaintiff's customers by tortiously, arbitrarily, in bad faith, and without justification placing Plaintiff on the MATCH list, thereby prohibiting it from obtaining payment processing and accepting credit cards and debit cards as payment for its goods and services.

69.     Plaintiff would still have ongoing business relationships with its customers had Defendants not interfered.

70.     Defendants' actions and/or inactions were wrongful because it did not exercise the good faith in deciding on MATCH list placement required by the Card Brand Rules.

71.     Defendants' actions were wrongful because it placed Plaintiff on the MATCH list for "excessive fraud" without any evidence that any fraud had been committed.

72.     Defendants' knew that the interference was certain and substantially certain to occur as a result of its actions.

73.     Fresno Bank, as the acquiring bank, must at all times be entirely responsible for, and must manage, direct and control, all aspects of its merchant program and the services performed by its registered third-party agents in support of the program, and establish and enforce

all program management and operating policies in accordance with the Card Brand Rules. As such it bears responsibility for NAB's non-compliance with the Card Brand Rules.

74. As a direct and proximate result of NAB and Fresno Bank's conduct, Plaintiff has lost significant business profits and other resulting damages in an amount to be determined at the time of trial and in excess of $75,000.

## COUNT IV
## TORTIOUS INTERFERENCE WITH A CONTRACT
### (Against NAB and Fresno Bank)

75. Plaintiff hereby repeats, re-alleges, and incorporates by reference herein as though set forth in full each and every allegation contained above.

76. At all relevant times, valid and binding contracts existed between Plaintiff and its customers, which provided economic value and monetary compensation to Plaintiff.

77. Defendants knew of the contracts Plaintiff had with its customers as they regularly processed transactions derived from payments for purchases by Plaintiff's customers.

78. Defendants interfered with Plaintiff's economic relationship with Plaintiff's customers by tortiously, arbitrarily, in bad faith, and without justification placing Plaintiff on the MATCH list, thereby interfering with Plaintiff's contractual rights with its customers.

79. Plaintiff would still have ongoing contractual relationships with its customers had Defendants not interfered.

80. NAB's actions and/or inactions were wrongful and tortious because it did not exercise the good faith in deciding on MATCH list placement required by the Card Brand Rules.

81. NAB's actions were wrongful and tortious because it placed Plaintiff on the MATCH list for "excessive fraud" without any evidence that any fraud had been committed.

82. Defendants knew that the interference was certain and substantially certain to occur as a result of its actions.

83. Fresno Bank, as the acquiring bank, must at all times be entirely responsible for, and must manage, direct and control, all aspects of its merchant program and the services performed by its registered third-party agents in support of the program, and establish and enforce all program management and operating policies in accordance with the Card Brand Rules. As such it bears responsibility for NAB's non-compliance with the Card Brand Rules.

84. As a direct and proximate result of NAB and Fresno Bank's conduct, Plaintiff has lost significant business profits and other resulting damages in an amount to be determined at the time of trial and in excess of $75,000.

## COUNT V
## FRAUD
### (Against Signature)

85. Plaintiff hereby repeats, re-alleges, and incorporates by reference herein as though set forth in full each and every allegation contained above.

86. As alleged above, Signature solicited Plaintiff on behalf of Fresno Bank for purveyance of Fresno Bank's payment processing services.

87. As part of that solicitation, Signature identified various fees for various services which would be payable under the Merchant Application to Signature.

88. Signature represented to Plaintiff that the fees that would be paid to Signature based on the volume of Plaintiff's payment processing for a given month were what was disclosed in the Merchant Application.

89. However, soon after engaging the services of Fresno Bank, Plaintiff became aware of charges for fees that were not disclosed in the Merchant Application and for those fees that did exist, charges in excess of those enumerated by the Merchant Application.

90. Signature knew that the representation was false or made it recklessly and without regard for the truth as it knew that there were fees that would be owed in excess of those that appeared in the Merchant Application.

91. Signature intended that Plaintiff rely on that representation to sign up for a processing account with Fresno Bank.

92. Plaintiff reasonably relied on Signature's representations that any fees incurred for purveyance of payment processing were displayed in the Merchant Application.

93. Plaintiff was harmed as a result of Signature's false representations.

94. Plaintiff's reliance on Signature's representation was a substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ERI Brands LLC respectfully requests this Court enter a judgment in favor of Plaintiff and against Defendants awarding Plaintiff:

a) Compensatory damages, including without limitation, incidental and consequential damages, in excess of $75,000, and interest thereon, in an amount according to proof at trial;

b) Pre- and post judgment interest at the maximum legal rate;

c) Punitive damages as provided for by law;

d) Attorney's fees and costs as provided for by law;

e) Full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant Fresno Bank, NAB, and Signature as a result of their unfair breach of contract and other violations of law; and

f) Such other and further relief as the Court may deem proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KUIPER KRAEMER P.C. |
| Date: February 15, 2023 | /s/ Scott W. Kraemer<br>Scott W. Kraemer (P69822)<br>KUIPER KRAEMER PC<br>Attorneys for Plaintiff<br>180 Monroe NW, Suite 400<br>Grand Rapids, MI 49503<br>(616) 454-3700<br>kraemer@k2legal.com |

18